**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| MECHELLE M. HOLLIS, | ) | CASE NO. 1:25-CV-00867-SL |
| | ) | |
| Plaintiff, | ) | DISTRICT JUDGE SARA LIOI |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | CARMEN E. HENDERSON |
| COMMISSIONER OF SOCIAL SECURITY, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Defendant, | ) | |
| | ) | |

**I. Introduction**

Plaintiff, Mechelle Hollis ("Hollis" or "Claimant"), seeks judicial review of the final decision of the Commissioner of Social Security denying her application for Supplemental Security Income ("SSI"). This matter is before me pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), and Local Rule 72.2(b). For the reasons set forth below, it is RECOMMENDED that the Court OVERRULE Claimant's Statement of Errors and AFFIRM the Commissioner's decision.

**II. Procedural History**

On June 9, 2022, Hollis filed an application for SSI, alleging a disability onset date of June 8, 2022 and claiming she was disabled due to asthma, anemia, depression, post-traumatic stress disorder (PTSD), and aspergillosis. (ECF No. 7, PageID #: 217). The application was denied initially and upon reconsideration, Hollis requested a hearing before an administrative law judge ("ALJ"). (ECF No. 7, PageID #: 145). On December 4, 2023, an ALJ held a hearing, during which Claimant, represented by counsel, and an impartial vocational expert testified. (ECF No. 7, PageID #: 61–88). On, April 24, 2024, the ALJ issued a written decision finding Hollis was not disabled.

1

(ECF No. 7, PageID #: 41). The ALJ's decision became final on March 6, 2025, when the Appeals Council declined further review. (ECF No. 7, PageID #: 28).

On May 1, 2025, Hollis filed her Complaint to challenge the Commissioner's final decision. (ECF No. 1.) The parties have completed briefing in this case. (ECF Nos. 9, 11). Hollis asserts the following assignments of error:

(1) The ALJ erred when she failed to properly apply the criteria of Social Security Ruling 96-8p and consider all of Plaintiff's impairments and related limitations when forming the RFC.

(2) The ALJ erred when she failed to support and/or address consistency with her conclusions regarding the opinions of the treating, examining, and reviewing sources.

(3) The ALJ erroneously failed to comply with Social Security Ruling 16-3p when evaluating the totality of Plaintiff's symptoms.

 (ECF No. 9 at 1).

## III. Background

### A. Relevant Hearing Testimony

At the hearing, Claimant appeared with counsel and testified as to her symptoms. (ECF No. 7, PageID #: 61–88). Vocational expert (VE), Ms. Lauren Petoff, testified as to Claimant's past work and potential to perform light work. (ECF No. 7, PageID #: 82–87). Claimant testified that she was unable to work due to her "breathing getting very difficult" and no longer having "the upper body strength anymore." (ECF No. 7, PageID #: 70–71). Claimant testified that she uses a nebulizer three times a day and also increased her usage of her inhaler, yet the nebulizer is the "only thing [that] works." (ECF No. 7, PageID #: 71). Claimant also testified that she began taking ferrous gluconate for her iron deficiency and the medication caused her fatigue, she experiences

weakness in her upper body, and experiences "windedness" when walking. (ECF No. 7, PageID #: 72–77). Yet, Claimant testified that she did not have any issues going to the grocery store independently, she is able to complete chores around the house, get dressed, and maintain her personal hygiene. (ECF No. 7, PageID #: 73–75).

**B. Relevant Medical Evidence**

The ALJ also summarized Hollis' health records and symptoms:

> Based on treatment notes from the claimant's primary care physician, the claimant's hypertension has been successfully managed with daily routine antihypertensive medication without any documented worsening effects in her eyes, heart, or kidney during the current adjudicating period.

> Based on treatment notes from the claimant's primary care physician during the current adjudicating period, the undersigned finds the claimant's primary care physician opined the claimant's lung nodule was not "concerning" based on a review of the report of the examining radiologist of a CT scan of her lungs on June 1, 2022, which was reconfirmed as stable and benign on a CT scan from June 1, 2023 (Exh. 6F, pp. 11-12; 2F, p. 16, 262-263). Similarly, although the claimant had an incidental finding of degenerative cervical spine disease on this CT scan from June 1, 2022, the longitudinal evidence fails to establish any significant limitations from a musculoskeletal spine disorder that have exacerbated the effects of the claimant's severe physical impairments during the current adjudicating period.

> With or without the combined effects of obesity with a body mass index of 41 kg/m2 on June 15, 2022, and on October 16, 2023, the undersigned finds the longitudinal effects of the claimant's asthma have required management with outpatient treatment respiratory control medication, such as loratadine 10 mg (for allergies), albuterol and Advair Diskus.

> The claimant has been diagnosed with iron-deficiency anemia for which she has been advised to take an iron supplement. The claimant testified that her iron supplement causes multiple side effects, including gastrointestinal distress and fatigue.

> Alternatively, on March 14, 2023, the claimant's primary care physician Tamar Bejanishvili, M.D., discussed iron infusions to treat the claimant's low hemoglobin levels secondary to anemia

from heavy menstruation (Exh. 5F, p. 4; see also Exh. 5F, p. 2). During a follow-up visit on June 21, 2023, the claimant decided that she "did not want to do infusions" because she was "trying to stick to natural supplements and holistic approach and would rather not do infusions, but she will think about it if her levels are still low[.]"

Based on a State Agency-requested consultative psychological evaluation by Jorethia Chuck, Ph.D., from March 22, 2023, the claimant was diagnosed with a major depressive disorder that meets the "paragraph A" criteria of Listing 12.04, during the current adjudicating period (Exh. 3F, p. 5). The claimant began receiving targeted mental health treatment (cognitive behavioral therapy only) in August 2023, which was after this State Agency evaluation, as noted in a mental assessment from her counselor at Abel Counseling dated October 25, 2023 (Exh. 4F). According to treatment notes from the claimant's cognitive behavioral counselor Abel Oriri, LPCC-S, since August 2023, the claimant has been diagnosed and treated for adjustment disorder with depressed mood (Exhs. 4F; 7F).

During the reconsideration determination, the claimant alleged her "asthma and breathing got worse because she was exposed to mold. They prescribed medication, but they did not work well. They also found a nodule in her lung. Her menstrual cycle got extremely heavy, and her vision got worse (Exh. 4A, p. 1).

(ECF No. 7, PageID #: 46–49, 52).

### C. Opinion Evidence at Issue

#### 1. Mental Impairment Questionnaire of Mr. Abel Oriri, LPCC-S

In October 2023, Claimant's counselor, Mr. Abel Oriri**,** completed a Mental Impairment Questionnaire regarding claimant's limitations. (ECF No. 7, PageID #: 346–47). Mr. Oriri indicated a diagnosis of adjustment disorder. (ECF No. 7, PageID #: 346)*.* Mr. Oriri was asked to "[d]escribe the *clinical findings* including results of mental status examination that demonstrate the severity of your patient's mental impairment and symptoms." (ECF No. 7, PageID #: 346). (emphasis in original). He noted that Hollis "suffers from [] depression, depressed and irritable mood, sleepiness, lack of energy and social withdrawal" and that her prognosis was "good with cognitive therapy." *Id.*

4

Mr. Oriri opined Claimant was "Limited but satisfactory" in her ability to carry out very short but simple instructions. *Id.* Moreover, Mr. Oriri opined Claimant was "Seriously limited, but not precluded" in her ability to carry out detailed instructions, understand and remember very short and simple instructions, understand and remember detailed instructions, asking simple questions or requesting assistance, getting along with co-workers or peers without distracting them or exhibiting behavioral extremes, responding appropriately to changes in the work setting, awareness of normal hazards and taking appropriate precautions. *Id.* "Seriously limited, but not precluded" is defined as "ability to function in this area is less than satisfactory, but not precluded in all circumstances. Individuals would be limited in their ability to perform activity 15% of [the] time." *Id.*

Furthermore, Mr. Oriri opined Claimant was "Unable to meet competitive standards" in the following categories: maintaining attention and concentration for extended periods, perform activities within a schedule, maintaining regular attendance and punctuality within customary tolerances, sustaining an ordinary routine without special supervision, working in coordination with or in proximity to others without being distracted by them, completing a normal workday and workweek without interruptions from psychologically based symptoms, performing at a consistent pace without an unreasonable number and length of rest periods, remembering locations and work-like procedures, interacting appropriately with the general public, accepting instructions and responding appropriately to criticism from supervisors, maintaining socially appropriate behavior and adhering to basic standard of neatness and cleanliness, setting realistic goals or making plans independently of others. (ECF No. 7, PageID #: 346–47). "Unable to meet competitive standards" is defined as "[the patient] cannot satisfactorily perform this activity independently, appropriately and on a sustained basis in a regular work setting." (ECF No. 7,

5

PageID #: 346). The ALJ found this opinion partially persuasive. (ECF No.  7, PageID #: 54).

Claimant challenges the ALJ's evaluation of this opinion.

### 2.  Examining Psychologist Jorethia L. Chuck, Ph.D.

In March 2023, Jorethia L. Chuck, Ph.D., completed a Psychological Evaluation pursuant

to Claimant's referral from the Division of Disability (DDD). (ECF No.  7, PageID #: 339). Dr.

Chuck opined the following summary and conclusions in her evaluation,

> Ms. Hollis presented with symptoms of depression, which appears
> to interfere with her functioning. Cognitive functioning is
> estimated to be in the average range based on presentation,
> education and work history. Based upon the information gathered
> during the interview session, it is my opinion, with reasonable
> scientific certainty, that Ms. Hollis suffers from a diagnosis of
> Major Depressive Disorder, Recurrent episode, Moderate.

(ECF No.  7, PageID #: 343). Moreover, Dr. Chuck indicated Claimant's prognosis "is

poor without treatment." (ECF No.  7, PageID #: 342).

Furthermore, Dr. Chuck opined the following limitations concerning Claimant's work-

related mental abilities:

> 1.  Describe the claimant's abilities and limitations in understanding,
> remembering, and carrying out instructions.
>
> Ms. Hollis' cognitive functioning is estimated to be in the average
> range based on presentation, education and work history. Ms.
> Hollis's presentation is consistent with a major depressive
> disorder. Her depression also impacts her ability to function on a
> daily basis. She would also have problems carrying out
> instructions.
>
> 2.  Describe the claimant's abilities and limitations in maintaining
> attention and concentration, and in maintaining persistence and
> pace, to perform simple tasks and to perform multi-step tasks.
>
> Ms. Hollis' depression would limit her ability to maintain attention
> and concentration. She has a lot of intrusive thoughts that would
> interfere with her concentration. She would have difficulty
> carrying out tasks that require her maintain persistence and pace.

3. Describe the claimant's abilities and limitations in responding appropriately to supervision and to coworkers in a work setting.

Ms. Hollis reported no [sic] having any coworkers or a supervisor. She did report in school her teachers liked her. Although depressed she appeared to try to present with social conformity during the interview she should be able to respond appropriately to supervision.

4. Describe the claimant's abilities and limitations in responding appropriately to work pressures in a work setting.

This claimant's mental ability to withstand the stresses and pressures associated with day-to-day work activities is assessed as having impairment. Given this claimant [sic] mental state her adjustment levels are likely to deteriorate under the pressures of a normal work setting.

(ECF No. 7, PageID #: 343–44). The ALJ found the opinion to be partially persuasive.

(ECF No. 7, PageID #: 54). Claimant challenges the ALJ's evaluation of this opinion.

### 3. State agency psychological experts, Michelle Hoy-Watkins Psy.D. and Erika Gilyot-Montgomery, Psy.D.

In April 2023, Michelle Hoy-Watkins Psy.D., completed a Mental Residual Functioning Capacity (MRFC) regarding Claimant's limitations. (ECF No. 7, PageID #: 96). Dr. Hoy-Watkins opined Claimant was moderately limited in the following categories: the ability to carry out detailed instructions, the ability to maintain attention and concentration for extended periods, the ability to complete a normal workday and work week without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, the ability to interact with the general public, and the ability to respond appropriately to changes in the work setting. (ECF No. 7, PageID #: 96–97).

In the section titled, "Explain in narrative form the sustained concentration and persistence capacities and/or limitations," Dr. Hoy-Watkins noted that Claimant was capable of

completing 2-3 step tasks in environments with flexible production standards and schedules, interacting with others superficially and infrequently, and performing static tasks in settings without frequent changes, where changes are introduced in advance. (ECF No. 7, PageID #: 96–97). In the section titled "MRFC Additional Explanation," Dr. Hoy-Watkins noted that "[t]he claimant retains the ability to understand, remember and follow simple instructions with adequate CPP. The claimant can adapt to predictable changes and work-related stressors. The claimant can engage in brief and superficial interactions." (ECF No. 7, PageID #: 97).

In July 2023, State agency psychologist Erika Gilyot-Montgomery, Psy.D., reviewed the record and agreed with Dr. Hoy-Watkins' entire Mental Residual Functioning Assessment. (ECF No. 7, PageID #: 105–107). The ALJ found both opinions to be persuasive. (ECF No. 7, PageID #: 54). Claimant challenges the ALJ's evaluation of this opinion.

## IV.    The ALJ's Decision

The ALJ made the following findings relevant to this appeal:

> 2. The claimant has the following severe impairments: asthma, anemia, obesity, major depressive disorder (20 CFR 416.920(c)).
>
> 3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).
>
> 4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except for the following limitations. She can occasionally climb ladders, ropes, or scaffolds. She can frequently climb ramps and stairs. She can frequently stoop, kneel, and crouch, but only occasionally crawl. She must avoid concentrated exposure to extreme cold, fumes, odors, dust, gases, and poor ventilation. She must avoid unprotected heights and dangerous moving machinery. She is able to understand, remember, and carry out simple, routine, and repetitive tasks and instructions. She cannot perform work requiring a specific

production rate, such as assembly-line work. She can meet production requirements that allow a flexible and goal-oriented pace. She can maintain the focus, persistence, concentration, pace, and attention to engage in such tasks for two-hour increments, for eight-hour workdays, within the confines of normal work breaks and lunch periods. She can deal with occasional changes in a routine work setting with changes explained in advance. She could tolerate occasional, brief, and superficial interactions with supervisors, coworkers, and the general public. "Brief" is defined as "no sustained communication or problem-solving." "Superficial basis" is defined as "unable to mediate, negotiate, arbitrate, confront, or direct or supervise others. She cannot perform any tandem tasks.

(ECF No. 7, PageID #: 46, 47, 51–52).

## V. Law & Analysis

### A. Standard of Review

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

### B.  Standard for Disability

The Social Security regulations outline a five-step process that the ALJ must use in determining whether a claimant is entitled to supplemental-security income or disability-insurance benefits: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) if not, whether the claimant can perform her past relevant work in light of her residual functional capacity ("RFC"); and (5) if not, whether, based on the claimant's age, education, and work experience, she can perform other work found in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)–(v); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642–43 (6th Cir. 2006). The claimant bears the ultimate burden of producing sufficient evidence to prove that she is disabled and, thus, entitled to benefits. 20 C.F.R. § 404.1512(a). Specifically, the claimant has the burden of proof in steps one through four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at step five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.*

### C.  Discussion

Hollis raises three issues on appeal. First, she argues that the ALJ erred in her consideration of Claimant's impairments and related limitations when forming the RFC. (ECF No. 9 at 8–11). Next, Claimant argues that the ALJ failed to support and/or address consistency with her conclusions regarding the opinions of the treating, examining, and reviewing sources. (ECF No. 9 at 11–16). Finally, Claimant argues the ALJ erred in her evaluation of the totality of Hollis' symptoms. (ECF No. 9 at 16–21). The Court addresses each of these arguments below.

**1.   The ALJ Properly Considered Claimant's Impairments and Limitations.**

Claimant's first argument challenges the ALJ's consideration of her impairments and limitations. (ECF No. 9 at 8–11).

The ALJ alone is tasked with determining a claimant's RFC. *See* 20 C.F.R. § 404.1546(c). The RFC is what an individual can still do despite his limitations. SSR 96-8p. It is an administrative assessment of the extent to which an individual's impairments and related symptoms may cause limitations or restrictions that affect her capacity to do work-related activities. *Id.* An ALJ's RFC assessment must be based on all relevant evidence in the case record and must include "a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Id.* "In rendering his RFC decision, the ALJ must give some indication of the evidence upon which he is relying, and he may not ignore evidence that does not support his decision, especially when that evidence, if accepted, would change his analysis." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 881 (N.D. Ohio 2011).

Claimant argues that the ALJ failed to consider the totality of Claimant's impairments, including, asthma, anemia, major depressive disorder, hypertension, lung nodule, and degenerative changes of the cervical spine, when formulating the RFC. (ECF No. 9 at 8). Specifically, Claimant argues that the ALJ erred by failing to consider "any effects related to Plaintiff's continuing fatigue, breathing difficulties, and varied psychological symptoms." (ECF No. 9 at 9).

The Commissioner responds that the "ALJ considered all of [Claimant's] impairments when assessing the RFC and reasonably concluded that she could perform light work." (ECF No. 11 at 9). The Commissioner argues the ALJ properly considered Claimant's impairments and limitations: medical evidence concerning Claimant's fatigue, limitations caused by obesity,

outpatient treatment for Claimant's breathing difficulties, Claimant's alleged worsening asthma, and psychological treatment. (ECF No. 11 at 9–11, 12). The Court agrees with the Commissioner for the reasons below.

The ALJ provided a comprehensive, narrative discussion detailing Claimant's impairments and medical evidence. Additionally, the ALJ detailed Hollis' severe and non-severe impairments throughout the decision. At the beginning of her decision, the ALJ concluded that, "claimant has the following severe impairments: asthma, anemia, obesity, major depressive disorder." (ECF No. 7, PageID #: 46). The ALJ then detailed Claimant's non-severe impairments, including hypertension and a lung nodule. The ALJ noted Claimant's successful management of her hypertension with medication, "the claimant's hypertension has been successfully managed with daily routine antihypertensive medication without any documented worsening effects in her eyes, heart, or kidney during the current adjudicating period." *Id.* The ALJ considered Claimant's lung nodule, deemed "not concerning" by her primary care physician. *Id.* at 47.

Turning to Claimant's severe impairments, the ALJ noted Claimant's obesity and body mass index of 41 kg/m2. (ECF No. 7, PageID #: 48). Moreover, on June 15, 2022, and on October 16, 2023, the ALJ found "the longitudinal effects of the claimant's asthma have required management with outpatient treatment respiratory control medication, such as loratadine 10 mg (for allergies), albuterol and Advair Diskus." *Id.* The ALJ also discussed Claimant's anemia, alleged worsening asthma, physiological impairments, and fatigue:

> The claimant has been diagnosed with iron-deficiency anemia for which she has been advised to take an iron supplement. The claimant testified that her iron supplement causes multiple side effects, including gastrointestinal distress and fatigue.

(ECF No. 7, PageID #: 48).

During the reconsideration determination level, the claimant reported a worsening of her asthma, but the longitudinal records, including an updated CT scan from June 1, 2023, fail to establish any significant changes in her lung structure that would suggest treatment modalities beyond the ones that she has been prescribed during the current adjudicating period.

(ECF No.  7, PageID #: 53).

The claimant has reported constant fatigue, sleep disturbances, and other symptoms that appear to be related to her diminished energy related to her iron-deficiency anemia, but she has not experienced any worsening episodes of altered awareness that required urgent medical attention in an inpatient capacity during the current adjudicating period.

(ECF No.  7, PageID #: 53).

[T]he claimant's counselor observed the claimant exhibited a "depressed and irritable mood, sleeplessness, lack of energy, and social withdrawal" all of which appear to mirror the claimant's allegations related to her subtherapeutically-managed anemia, which bolsters the diagnosis of an adjustment disorder with depressed mood.

(ECF No.  7, PageID #: 53).

Based on the totality of the evidence through Exhibit 7F, that was received through the date of this decision, the undersigned finds the conservatively-treated effects of the claimant's severe impairments have imposed significant limitations that have restricted her to a reduced range of light work within the scope of the limitations set forth in this Finding and discussed in the previous Finding, on a sustained, regular, and continuing basis.

(ECF No.  7, PageID #: 54).  Contrary to Claimant's assertions, the ALJ's decision thoroughly considered the record evidence and includes an RFC crafted specific to Claimant's impairments. In her RFC evaluation, the ALJ provided a thorough review of Claimant's impairments, and considered evidence such as Claimant's updated CT scan, treatment, subjective symptoms, psychiatric assessment, and medications. (ECF No.  7, PageID #: 48, 53–54). Thus, the ALJ's determination is supported by substantial evidence detailed above.

13

Claimant concedes "the ALJ noted that the 'longitudinal effects' of Plaintiff's asthma and obesity 'have caused her significant limitations'… and 'constant fatigue, sleep disturbances, and other symptoms that appear to be related to her diminished energy related to her iron-deficiency anemia.'" (ECF No. 9 at 10). However, Claimant urges this Court to reconsider the RFC and in effect reweigh the evidence in her favor because "[the ALJ] failed to include any related limitations in her ultimate RFC." *Id.* This is beyond the purview of this Court. Because substantial evidence supports the Commissioner's decision, the Court must defer to it, "even if there is substantial evidence that would have supported an opposite conclusion." *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)); *see Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) ("The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion.") (citations omitted).

**2. The ALJ Properly Evaluated Counselor Abel Oriri's Opinion Evidence for Supportability and Consistency.**

Claimant contends the ALJ's analysis of Counselor Abel Oriri's opinion lacked supportability, consistency, and failed "to detail which findings [were] persuasive and which were not." (ECF No. 9 at 14). Although Claimant initially asserts "[the] ALJ failed to support and/or address consistency with her conclusions regarding the opinions of the treating, examining, and reviewing sources," Claimant only challenges the supportability and consistency of treating source, Abel Oriri, in her brief. (ECF No. 9 at 11–16). Claimant generally challenges the ALJ's consideration of treating source Dr. Chuck's opinion and the opinions of the State Agency reviewing psychologists, Dr. Hoy-Watkins and Dr. Gilyot-Montgomery. (ECF No. 9 at 14–15). The Court addresses these issues below.

At Step Four, the ALJ must determine a claimant's RFC by considering all relevant medical and other evidence. 20 C.F.R. §§ 404.1520(e). For claims filed after March 27, 2017, such as this one, the Social Security Administration "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)." C.F.R. § 404.1520c(a). Still, an ALJ must "articulate how [she] considered the medical opinions and prior administrative medical findings" in adjudicating a claim. 20 C.F.R. § 404.1520c(a). Medical source opinions are evaluated using the factors listed in 20 C.F.R. § 404.1520c(c).

"Under Social Security regulations, an ALJ weighing medical opinions must consider two factors: supportability and consistency. The supportability analysis examines 'the extent to which the objective medical evidence and supporting explanations presented by a medical source… support his… medical opinion(s).' The consistency analysis looks at how consistent a medical opinion is with evidence from other sources." *Woodard*, 2023 U.S. Dist. Lexis 159761, at *5 (citations omitted). The Social Security regulations define these factors:

1. Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.

2. Consistency. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. § 404.1520c(c)(1)-(2).

Moreover, "[w]hether a medical source's opinion is supported by the record may necessarily overlap with whether a medical source's opinion is consistent with the record, as the opinion's support will typically come from other evidence in the record." *Guthrie v. Comm'r of Soc. Sec*, 2023 WL 6258259, at * 3 (N.D. Ohio Sept. 26, 2023). *See also Rambo v. Comm'r of Soc.*

15

*Sec.*, 2024 WL 3813417, at * 7 (N.D. Ohio July 9, 2024), *report and recommendation adopted by* 2024 U.S. Dist. LEXIS 190429, 2024 WL 4532777 (N.D. Ohio Oct. 21, 2024); *Bigford v. Comm'r of Soc. Sec.*, 2024 WL 3083251, at * 3 (W.D. Mich. June 21, 2024) ("The ALJ's specific references to portions of the medical record which undercut Nwankwo, Grubelich, and Abbasi's opinions evidence her consideration of the supportability and consistency factors. This is sufficient, even if the ALJ did not specifically code a particular portion of the record to 'consistency' or 'supportability.'") Thus, even where an ALJ appears to conflate the terms "supportability" and "consistency," courts have found no error where the court is able to follow the ALJ's reasoning and is satisfied that the ALJ properly performed the requisite analysis of these factors. *See*, *e.g.*, *Potts v. Comm'r of Soc. Sec.*, 2024 WL 4660850, at * 8–9 (N.D. Ohio Nov. 4, 2024), *report and recommendation adopted by* 2025 U.S. Dist. LEXIS 94672, 2025 WL 1427632 (N.D. Ohio May 19, 2025).

Claimant alleges that the ALJ failed to address the supportability factor in her analysis of Mr. Oriri's opinion as she failed to "detail which findings were persuasive and which were not." (ECF No. 9 at 14). Moreover, Claimant contends "[t]he ALJ failed to support her conclusions and/or discuss which evidence was consistent with her conclusions." *Id.* The Commissioner responds that the ALJ addressed the supportability factor as she reviewed the evidence Mr. Oriri relied upon to form his opinion earlier in the decision. (ECF No. 11 at 12–13). This Court agrees with the Commissioner.

The ALJ found Mr. Oriri's opinion partially persuasive. She reasoned:

> As explained, the undersigned is partially persuaded by the mental functional assessment from the claimant's counselor, Abel Oriri, LPCC-S, dated October 2023, because, while the diagnostic assessment corroborates the claimant's allegations during the State Agency consultative psychological evaluation with Dr. Chuck, the claimant's reliance on non-medication management for her health

16

> and her ability to maintain her personal needs and seek assistance
> when necessary without the need for a highly-supportive living
> arrangement bolsters the nonexertional mental limitations that are
> set forth in this Finding.

(ECF No. 7, PageID #: 54). Here, the ALJ was partially persuaded by Mr. Oriri's mental functional assessment as the assessment was consistent with Dr. Chuck's earlier psychological evaluation, yet found other evidence of the record, the Claimant's non-medication management of her health, ability to manage her personal needs, lack of high supportive living arrangement, and ability to seek assistance, supported a finding for nonexertional mental limitations. *Id.* Contrary to Claimant's contentions, the ALJ is not required to discuss supportability and consistency in one paragraph. *Stinedurf v. Comm'r of Soc. Sec.*, Case No. 4:19 cv 0485, 2019 U.S. Dist. LEXIS 223794, 2019 WL 7484050, at *9 (N.D. Ohio Dec. 20, 2019) (citing *Buckhannon ex rel. J.H.*, 368 F. App'x at 678–79) ("There is no requirement that the ALJ incorporate all the information upon which he relied into a single tidy paragraph."). Reviewing courts "read the ALJ's decision as a whole and with common sense." *Buckhanon ex rel. J.H. v. Astrue*, 368 F. App'x 674, 678–79 (7th Cir. 2010). An ALJ is not required to "spell out every fact a second time" if the ALJ has "described" the evidence "and made factual findings" about the evidence elsewhere in the opinion. *Bledsoe v. Barnhart*, 165 F. App'x 408, 411 (6th Cir. 2006).

Earlier in the opinion, the ALJ provided additional reasoning for her determination that some of the counselor's conclusions were supported by the record and other conclusions lacked support:

> [T]he undersigned is only partially persuaded by the mental
> functional assessment from the claimant's counselor, Abel Oriri,
> LPCC-S, dated October 2023 (Exh. 4F). Specifically, the claimant's
> counselor observed the claimant exhibited a "depressed and irritable
> mood, sleeplessness, lack of energy, and social withdrawal" all of
> which appear to mirror the claimant's allegations related to her
> subtherapeutically-managed anemia, which bolsters the diagnosis of

17

an adjustment disorder with depressed mood (Exh. 4F; see also Exh. 5F, pp. 2-4; see, e.g., Exh. 6F, pp. 6, 15, 25, 32). That said, the claimant's prognosis has been deemed "good" with her ongoing compliance with outpatient cognitive behavioral therapy since August 2023 (Exh. 4F). Functionally, the undersigned is not persuaded by this counselor's opinion that the claimant's mental impairment precluded her from sustaining activities within the four broad areas of mental functioning because the claimant has continued to remain independent in managing her physical and mental health in an outpatient capacity. In fact, despite access to iron infusions, the claimant has found and has been focusing on self-guided holistic remedies to manage her iron deficiency.

(ECF No.  7, PageID #: 53).  Here, the ALJ discussed Mr. Oriri's opinion at length in two separate paragraphs. The ALJ noted Mr. Oriri's observations including, "[Claimant's] depressed and irritable mood, sleeplessness, lack of energy, and social withdrawal." (ECF No.  7, PageID #: 53).  The ALJ then concluded that Mr. Oriri's observations were supported by Dr. Chuck's earlier diagnosis of adjustment disorder with depressed mood. *Id.* Thus, when reading the decision as whole, the Court finds that the ALJ's overall discussion of Mr. Oriri's opinion, including the records relied upon by Mr. Oriri, are sufficient to adequately articulate her supportability assessment.

Moreover, the ALJ considered the lack of consistency of Mr. Oriri's opinion. The consistency factor requires an ALJ to consider the degree to which a medical opinion is consistent with evidence from other medical and nonmedical sources. 20 C.F.R. § 404.1520c(c)(2). The Court reviews the ALJ's determination as a whole. *See Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 851–52 (6th Cir. 2020); *Crum*, 660 F. App'x at 457. Here, the ALJ found Mr. Oriri's opinion not consistent with the record evidence, "[as] the claimant has continued to remain independent in managing her physical and mental health in an outpatient capacity" and "[Claimant is] focusing on self-guided holistic remedies to manage her iron deficiency." (ECF No.  7, PageID #: 53). The ALJ also found Claimant's "good" prognosis with

18

"ongoing compliance with outpatient cognitive behavioral therapy" to undermine the consistency of Mr. Oriri's opinion. *Id.* Thus, the ALJ provided a logical bridge between her conclusions, the provider's evidence, and evidence in the record, in concluding that Mr. Oriri's opinion is not consistent with evidence of the record. Therefore, the consistency factor as to Mr. Oriri's opinion is satisfied.

Additionally, Claimant challenges the ALJ's consideration of treating source Dr. Chuck's opinion and the opinions of the State Agency reviewing psychologists, Dr. Hoy-Watkins and Dr. Gilyot-Montgomery. (ECF No. 9 at 14–15). Claimant contends, "[the ALJ] was partially persuaded by the opinion of Dr. Chuck and persuaded by the opinion of the state agency reviewing psychologists (citation omitted). Yet, the ALJ failed to incorporate the opined limitations into her RFC." *Id.* Specifically, Claimant argues that the ALJ "failed to incorporate" the state agency psychologists' limitation that Claimant needed flexible production standards and schedules and Dr. Chuck's limitation that Claimant "would have problems carrying out instructions, limit her ability to maintain attention and concentration, and her adjustment levels were likely to deteriorate under the pressures of a normal work setting." *Id.* Finally, Claimant concludes, "[f]ailing to incorporate these psychological limitations which caused more than a minimal limitation in her ability to perform basic mental work activities was harmful error" requiring remand. (ECF No. 9 at 15). Contrary to Claimant's assertions, the ALJ properly considered the opinions as discussed below.

As an initial matter, Claimant misunderstands the role of the ALJ and state agency reviewing psychologists. The ALJ is charged with assessing a claimant's RFC "based on all of the relevant medical and other evidence" of record. 20 C.F.R. § 416.945(a)(3). Even where an ALJ provides "great weight" to an opinion, there is no requirement that an ALJ adopt a state

agency psychologist's opinion verbatim; nor is the ALJ required to adopt the state agency psychologist's limitations wholesale. *See Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 275 (6th Cir. 2015); *see also Harris v. Comm'r of Soc. Sec. Admin.*, No. 1:13-CV-00260, 2014 U.S. Dist. LEXIS 11569, 2014 WL 346287, at *11 (N.D. Ohio Jan. 30, 2014). Here, the ALJ found the opinions of Dr. Hoy-Watkins and Dr. Gilyot-Montgomery to be persuasive. (ECF No. 7, PageID #: 52). The state agency psychological experts found that "[Claimant] can meet production requirements that allow a flexible and goal oriented pace" and Claimant was "Not Significantly Limited" in "[t[he ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances." (ECF No. 7, PageID #: 52, 96, 97). Thus, the ALJ formulated an RFC that included, "[Claimant] can meet production that allow a flexible and goal-oriented pace." (ECF No. 7, PageID #: 52). Therefore, the ALJ's consideration of both Dr. Hoy-Watkins and Dr. Gilyot-Montgomery's opinions is not erroneous.

Turning to the ALJ's evaluation of Dr. Chuck's evaluation, the ALJ found the opinion to be partially persuasive. (ECF No. 7, PageID #: 54). However, the ALJ found "[Dr. Chuck's] limitations are also vague in that the examiner found the Claimant would have problems or difficulties in the areas of mental functioning but does not define the degree of limitation or specific work-related restrictions." *Id.* The Sixth Circuit has held that "[v]agueness, or the failure to propose specific functional limitations, can be a reason to discount a medical opinion." *See Quisenberry v. Comm'r of Soc. Sec.*, 757 F. App'x 422, 434 (6th Cir. 2018); *see also Springer v. Comm'r of Soc. Sec.*, No. 5:19 CV 2562, 2020 U.S. Dist. LEXIS 251991, at *26 (N.D. Ohio Oct. 8, 2020). Dr. Chuck's opinion lacked specific functional limitations. For example, she described Claimant's ability to understand, remember, and carry out simple oral instructions as "estimated to be in the average range based on presentation, education and work

history." (ECF No. 7, PageID #: 343*). She similarly opined Claimant's ability to maintain attention and concentration "Ms. Hollis' depression would limit her ability to maintain attention and concentration. She has a lot of intrusive thoughts that would interfere with her concentration." *Id.* These opinions lack the specificity required for the ALJ to determine "the most [Plaintiff] can still do despite [Plaintiff's] limitations." 20 C.F.R. §§ 404.1545(a)(1). Therefore, the ALJ's assessment that the opinion was vague is not erroneous.

### 3. The ALJ Properly Considered Claimant's Subjective Symptoms.

Claimant's third argument challenges the ALJ's consideration of her subjective complaints. (ECF No. 9 at 16–21).

The evaluation of a claimant's subjective complaints rests with the ALJ. *See Siterlet v. Sec'y of HHS*, 823 F.2d 918, 9 20 (6th Cir. 1987); *Rogers*, 486 F.3d at 248 (noting that "credibility determinations regarding subjective complaints rest with the ALJ"). In evaluating a claimant's symptoms, an ALJ must look to medical evidence, statements by the claimant, other information provided by medical sources, and any other relevant evidence in the record. 20 C.F.R. § 404.1529(c); SSR 16-3p, 2017 WL 5180304. Beyond the medical evidence, an ALJ should consider daily activities; location, duration, frequency, and intensity of the pain or other symptoms; factors that precipitate and aggravate the symptoms; type, dosage, effectiveness, and side effects of medication to alleviate pain or other symptoms; treatment other than medication; any measures other than treatment the individual uses to relieve symptoms; and any other factors concerning the individual's functional limitations and restrictions. SSR 16-3p, 2017 WL 5180304, at *7–8. The ALJ need not analyze all seven factors but should show that she considered the relevant evidence. *See Cross v. Comm'r of Soc. Sec.*, 373 F. Supp. 2d 724, 733 (N.D. Ohio 2005).

21

Here, Claimant contends that the ALJ "failed to articulate any supportable rationale for finding that Plaintiff's statements … were not entirely consistent with medical evidence. The basis for the ALJ's determination, therefore, was in error and not supported by the record. [S]he did not comply with the requirements of SSR 16-3p." (ECF No. 9 at 20). Claimant further asserts, "[t]his was harmful error as the totality of the evidence documenting Plaintiff's disabling symptoms were ignored and/or disregarded by the ALJ, there was an insufficient analysis." *Id.* at 21.

The Commissioner rejects Claimant's argument contending:

> The ALJ considered the entire record and reasonably concluded that while Plaintiff had functional limitations, she failed to show that her symptoms were of the severity to preclude all work given that her counselor noted that her prognosis was good with treatment; she did not require inpatient or intensive outpatient treatment to manage her severe impairments; and the state agency consultants concluded that she could perform a range of light work with nondisabling mental limitations.

(ECF No. 11 at 16). This Court agrees with the Commissioner for the reasons below.

The ALJ provided the following explanations in finding Claimant's allegations inconsistent with the record:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.
>
> Physically, the longitudinal effects of the claimant's asthma and obesity have caused her significant limitations that have restricted her to a reduced range of light work with the exertional and nonexertional pulmonary and postural limitations set forth in this Finding on a sustained, regular, and continuing basis during the current adjudicating period.
>
> During the reconsideration determination level, the claimant reported a worsening of her asthma, but the longitudinal records,

including an updated CT scan from June 1, 2023, fail to establish any significant changes in her lung structure that would suggest treatment modalities beyond the ones that she has been prescribed during the current adjudicating period (Exh. 4A, p. 1; but see Exh. 6F, pp. 262-263; see generally Exhs. 6F; 2F, p. 16; 5F, pp. 2, 4).

Regarding the claimant's anemia, the undersigned finds the claimant has been diagnosed multiple times for low hemoglobin for which her primary care physician has recommended iron infusions that the claimant has refused through the date of this decision. During a follow-up visit on June 21, 2023, the claimant decided that she "did not want to do infusions" because she was "trying to stick to natural supplements and holistic approach and would rather not do infusions, but she will think about it if her levels are still low" (Exh. 5F, p. 2; see also Exh. 2F, p. 16). The record indicates the claimant restarted management of her iron-deficiency anemia in June 2022, after a gap in supplementation (Exh. 2F, p. 16). The claimant has reported constant fatigue, sleep disturbances, and other symptoms that appear to be related to her diminished energy related to her iron-deficiency anemia, but she has not experienced any worsening episodes of altered awareness that required urgent medical attention in an inpatient capacity during the current adjudicating period (Exh. 5F; see, e.g., Exh. 6F, pp. 6, 15, 25, 32).

Claimant's counselor observed the claimant exhibited a "depressed and irritable mood, sleeplessness, lack of energy, and social withdrawal" all of which appear to mirror the claimant's allegations related to her subtherapeutically-managed anemia, which bolsters the diagnosis of an adjustment disorder with depressed mood (citation omitted). That said, the claimant's prognosis has been deemed "good" with her ongoing compliance with outpatient cognitive behavioral therapy since August 2023 (Exh. 4F).

(ECF No. 7, PageID #: 52–53). These discussions reflects that the ALJ found Claimant's symptom allegations inconsistent with the overall record based on proper factors, including improvement with ongoing cognitive behavioral therapy, Claimant's chosen treatment of her anemia, lack of objective evidence supporting limitations, and the frequency, duration, and consistency of Claimant's symptoms. *See* SSR 16-3p, 2017 WL 5180304 at *7–8. However, Claimant cites to evidence that she believes support her argument and contends that "[d]iscounting Plaintiff's

complaints was in error as there was no stated basis for this incorrect determination." (ECF No. 9, at 19). But Claimant's disagreement with how the ALJ weighed the evidence does not establish a lack of substantial evidence supporting the ALJ's analysis.

Additionally, the ALJ relied upon the findings of the State Agency medical and physiological consultants and concluded that their findings were generally consistent with the evidence. (ECF No. 7, PageID #: 54). The ALJ noted that state agency medical and psychological experts, Dr. Rohini Mendonca, Dr. Honigman, Dr. Hoy-Watkins, and Dr. Gilyot-Montgomery reviewed the record, and all concluded Claimant could perform light work with non-disabling mental limitations. (ECF No. 7, PageID #: 95, 105) ("The established MDI [Medically Determinable Impairments] were carefully considered in producing an RFC that reflects the claimant's ability to sustain work related functions over an 8-hour workday and a 5-day work week."); (ECF No. 7, PageID #: 96–98) ("Clt appears capable of completing 2-3 step tasks in environments with flexible production standards and schedules …The claimant retains the ability to understand, remember and follow simple instructions with adequate CPP. The claimant can adapt to predictable changes and work-related stressors. The claimant can engage in brief and superficial interactions.").

As noted by the Commissioner, an ALJ's consideration of state agency findings are relevant to an ALJ's assessment of a claimant's subjective complaints. *See Benson v. Colvin,* No. 3:13 CV 67, 2013 WL 5797747, at *14 (N.D. Ohio Oct. 28, 2013) (finding the ALJ did not improperly consider the Plaintiff's credibility as the state agency physicians' both concluded Plaintiff was capable of a limited range of light exertional work); *Jurcago v. Comm'r of Soc. Sec.,* No. 5:23-CV-01187-JG, 2024 U.S. Dist. LEXIS 96612 (N.D. Ohio May 2, 2024) (finding the ALJ's consideration of the state agency opinions supports the ALJ's assessment of claimant's

subjective complaints); *Tomlin v. Comm'r of Soc. Sec.*, No. 4:23-CV-01192-CEH, at *11 (N.D. Ohio Apr. 12, 2024). In this case, the ALJ adopted the State Agency medical and psychological consultants' physical and mental opinions upon reconsideration, finding that Claimant can perform light work. (ECF No. 7, PageID #: 54). Thus, it is clear to the Court that the ALJ considered the relevant evidence in making her determination and that substantial evidence supports the ALJ's conclusion. As the Court will not reweigh the evidence when reviewing an ALJ's decision, no compelling reason exists for the Court to disturb the ALJ's credibility finding. *Cross*, 373 F. Supp. 2d at 732.

## VI. Recommendation

Based on the foregoing, it is RECOMMENDED that the Court OVERRULE Hollis's Statement of Errors and AFFIRM the Commissioner's decision.

Dated: January 7, 2026

s/ *Carmen E. Henderson*
CARMEN E. HENDERSON
U.S. MAGISTRATE JUDGE

---

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document. Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Beauvais*, 928 F.3d 520, 530-31 (6th Cir. 2019).